# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Kevin Ussatis and Julie Ussatis, ) | |
| ) | |
| Plaintiffs, ) | **ORDER RE MOTION TO COMPEL** |
| ) | **RULE 35 EXAMINATION** |
| vs. ) | |
| ) | |
| Marilyn Theresa Bail, ) | |
| d/b/a M.R. Enterprises, LLC, ) | |
| ) | Case No. 1-18-cv-62 |
| Defendant. ) | |

## I.   BACKGROUND

In this action, plaintiff Kevin Ussatis ("plaintiff") was the engineer on a train that collided with defendant's semi-truck at approximately 45 m.p.h. There is some evidence that plaintiff lost consciousness for a short period of time following the collision. However, after some delay at the scene of the accident, plaintiff continued to drive the train to the end of his run.

Plaintiff subsequently was awarded complete disability, primarily due to the consequences of a closed-head injury he suffered. Defendant admits 100% of the fault for the accident rests with it and the only issue for trial is the amount of damages.

Before the court is defendant's motion to compel plaintiff to under go a neuropsychological examination along with a request to delay the trial to accommodate the examination. Plaintiff opposes the motion, contending that the conditions for the examination are not acceptable. Plaintiff also opposes the request for a continuance.

On May 20, 2019, the court held a telephone conference with the parties to discuss defendant's motion.

## II.     DISCUSSION

### A.     Whether the examination should be required

Plaintiff contends that an examination is unnecessary because his own doctors have performed two neuropsychological examinations and the examinations have not shown any abnormalities. However, given that plaintiff (1) claims he has suffered from a closed-head injury, (2) clams impairments that may be of a neuropsychological nature (including memory loss, anxiety, and depression), and (3) is seeking several million dollars in damages, the court is loathe to deny defendant the tool its attorneys believe is necessary to mount a proper defense. For example, with respect to the claim that plaintiff now has memory problems (including, for example, forgetting on occasion where he placed an object), defendant's expert might come to the conclusion following his examination that the perceived detriments are consistent with the cognitive abilities of a person of plaintiff's age and background and not necessarily the product of head trauma. Further, given questions raised in the initial neuropsychological examination and in a later followup evaluation with respect to  the permanency of some of the claimed psychological impairments, additional testing now may cast some light on that issue—one way or the other.[1] Finally, even if the depression and anxiety are the products of circumstances resulting from the accident (*e.g.*, the resulting changes in plaintiff's life, including an inability to work at his chosen trade) and not the product of head

---

[1] It appears an initial neuropsychological examination was conducted on October 25, 2016, a little over two months following the accident on August 10, 2016., by a neuropsychologist. Later, on October 27, 2017, plaintiff's treating neurologist (an M.D.) made several recommendations, including that there be a followup neuropsychological examination. Plaintiff was seen for a followup evaluation on January 8, 2018, by another neuropsychologist. On that occasion, the examining professional conducted a new diagnostic interview but, for the most part, relied on the earlier psychological testing after concluding that additional testing was not necessary at that point. Further, while he intimated that a future evaluation would not be necessary absent an obvious change in plaintiff's neurocognitive abilities, the report does raise questions about permanency with respect to some of the claimed deficits and states that "the availability of the previous neurocognitive baseline data should allow for more sensitive detection of future neurocognitive changes." (Doc. No. 31-2).

trauma, defendant's examining expert appears qualified to evaluate that also.

For these reasons, the court will require plaintiff to undergo the examination and his arguments of lack of necessity and proportionality are rejected.

**B.     Whether the court should permit defendant's expert to conduct a diagnostic interview and, if so, whether that interview should be recorded**

The examination that defendant's neuropsychologist wants to conduct is compromised of three parts: a diagnostic interview of the plaintiff; cognitive testing; and completion of a symptoms questionnaire. Plaintiff's counsel argues there is no need for a diagnostic interview, contending that defendant's expert can refer to the prior examination reports and plaintiff's deposition for the information he needs. In the alternative, plaintiff contends that, if a diagnostic interview is permitted, it should be recorded, preferably by video.

With respect to the issue of necessity, it appears the diagnostic interview is important for more than just information gathering. The manner in which the plaintiff conveys the information is also important. The report of plaintiff's own neuropsychologist reflects as much. Further, in this instance, there may be a need for the defense expert to ask questions that were not covered by the earlier examinations.

For these reasons, the court will not restrict defendant's expert with respect to what he believes is necessary for him to make a proper evaluation. The diagnostic interview portion of the examination may proceed. This leaves the issue of whether the diagnostic interview needs to be recorded.

In opposing the recording, defendant states that its expert has advised that recording is contrary to accepted practices within his profession. In further support of that point, defendant has proffered a 2001 policy statement of the American Academy of Clinical Neuropsychology entitled

"Policy Statement on the Presence of Third Party Observers in Neuropsychological Assessments" that was published in The Clinical Neuropsychologist, Vol. 15, No. 4, pp. 433–39. The American Academy takes the position in the policy statement that, with some exceptions, audio and video recording should not be permitted during a medicolegal patient examinations for several reasons, including, as particularly relevant here, the potential for it adversely affecting the results of the examination.

Fed. R. Civ. P. 35 does not address the issue of recording and the Eighth Circuit appears not to have considered it. The prevailing view, at least among the district courts of the Eighth Circuit, appears to be that recording a Rule 35 psychological examination not be ordered—at least absent special circumstances. Perhaps, the leading case is Tomlin v. Holecek, 150 F.R.D. 628 (D. Minn. 1993) ("Tomlin"), where the court concluded:

> Were we to honor the Plaintiff's request, that his counsel be present during the interview or that a tape-recording of the interview be preserved so as to assist in his attorney's questioning of Dr. Aletky, we would be endorsing, if not promoting, the infusion of the adversary process into the psychologist's examining room to an extent which is, in our considered judgment, inconsistent with the just, speedy and inexpensive resolution of civil disputes, and with the dictates of Rule 35.

Id. at 633–34; see also Sellers v. Deere & Co., Nos. C12-2050 et al., 2013 WL 12155343, at *2 (N.D. Iowa Sept. 25, 2013) (denying request that a Rule 35 psychological examination be recorded); Letcher v. Rapid City Regional Hosp., Inc., Civ. No. 09-5008, 2010 WL 1930113 (D.S.D. 2010) (same); but cf. Cardenas v. Prudential Ins. Co. of Am., Civ. No. 99-1421, 2004 WL 741539 (D. Minn. Mar. 1, 2004) (the district judge stated that, while he may have decided the issue differently, the magistrate judge had not obviously erred in denying the motion to preclude audio taping based upon the unique circumstances of the case, which included the contentiousness of the parties and

plaintiff's expert insisting on the examination being recorded and defendant objecting).[2]

Outside of the Eighth Circuit, the cases are somewhat more divided. A number of courts (perhaps, the majority) have taken the position that a recording should not be permitted absent good cause for requiring a recording. Others have held differently, with several concluding that an audio recording would not be unduly obtrusive, would help insure the diagnostic interview is kept within proper bounds, and would assist plaintiff's counsel in evaluating the results as well as provide a source of information for cross-examination if the results are contested. Compare, e.g., Favale v. Roman Catholic Diocese of Bridgeport, 235 F.R.D. 553, 557 (D. Conn. 2006) (recording should be permitted only upon a showing of good cause); Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 628–32 (D. Kan. 1999) ("Hertenstein") (same) with Gade v. State Farm Mut. Ins. Co., No. 2015 WL 12964613, at *4 (D. Vt. Jan. 2, 2015) (permitting an audio recording); Gavenda v. Orleans County, 174 F.R.D. 272, 274 (W.D.N.Y.1996) (same).

---

[2] District courts within the Eighth Circuit have also denied requests for video or audio recording of Rule 35 examinations when the claimed impairments are physical in nature. One of the more recent cases is Shannon v. Ellis, No. 4:18-cv-00506, 2018 WL 4698783 (E.D. Mo. Oct. 1, 2018), where the court stated:
> Although there is authority for permitting third parties or recordings of Rule 35 examinations, the party seeking to have an observer present bears the burden of demonstrating "good cause" for the request under Rule 26(b), Fed. R. Civ. P., as the presence of a third party is not typically necessary or proper. Tarte v. United States, 249 F.R.D. 856, 859 (S.D. Fla. 2008) (citation omitted). Indeed, courts have held that the presence of a third party or recording device, which is analyzed in the same way that the presence of an observer is considered, "subvert[s] the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regard to evaluating the plaintiff's [medical] status." Id. (quoting Favale v. Roman Catholic Diocese of Bridgeport, 235 F.R.D. 553, 557 (D. Conn. 2006)). See also Romano v. II Morrow, Inc., 173 F.R.D. 271 (D. Or. 1997), where the court articulated the reasons for prohibiting third parties at an examination:
>> [A]n observer, a court reporter, or recording device would constitute a distraction during the examination and work to diminish the accuracy of the process. [An observer could] potentially distract the examining [physician] and examinee thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry ...The Court finds that the presence of the observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.
> Id. at 273-74 (quoting Shirsat v. Mutual Pharm. Co., 169 F.R.D. 68, 70–71 (E.D. Pa. 1996)).

Id. at *2. Cf. York v. Union Pacific Railroad Co., No. 8:08-cv-507, 2009 WL 3633827, at **2-3 (D. Neb. Oct. 30, 2009) (denying request that plaintiff be permitted to have someone present during a Rule 35 orthopedic examination).

After considering the relevant authorities, the undersigned considers the analysis and conclusions of the District of Minnesota in Tomlin and the District of Kansas in Hertenstein to be the more persuasive. In both cases, the courts weighed the reasons proffered for why recording should be permitted against the countervailing considerations and ultimately concluded recording should not be ordered.

In Hertenstein, the reasons proffered by the plaintiff for why a recording should be required were summarized by the court as follows:

> Plaintiff wants to tape record her examination. She contends that Dr. Hughes is not neutral, as defendant engaged him to advance its interests. She claims a right to record the mental examination. She argues that denying her that right would infringe upon her right to be assisted by counsel. She suggests that a tape recording will ensure that the scope and manner of the examination are proper. She fears that an unsupervised examination will be transformed into a *de facto* deposition. She contends her interest in protecting herself from unsupervised interrogation outweighs the interest of defendant in making the most effective use of its expert. She also suggests that a tape recording will ensure an accurate depiction of the procedure and permit her attorney to hear information necessary to cross-examine Dr. Hughes. She believes the recording will comfort her to know that there will be no dispute about her responses. She wants a "familiar" third person present, as recommended by Dr. Sancho. Plaintiff contends that a familiar face in the examining room will partially remove the adversarial nature of the examination. She suggests this will improve its quality and provide her needed comfort.

189 F.R.D. at 628. More or less the same reasons were articulated by the plaintiff in Tomlin and now here by the plaintiff in this case.

In addressing the proffered reasons for recording, the courts in Hertenstein and Tomlin concluded there was no reason to presume bias, unfairness, or the use of unconventional or improper techniques on the part of the defense experts identified in those cases given their professional obligations to follow accepted practices and comply with ethical norms. For this reason, the mere possibility that a defendant's expert might act inappropriately during an unmonitored examination of plaintiff was not enough to justify recording of the examination in view

of the countervailing considerations. Something more would have to shown. Hertenstein, 189 F.R.D. at 633; Tomlin, 150 F.R.D. at 632–33.

With respect to the benefit to plaintiff's counsel of having a recording, both courts found that not to be a sufficient reason noting there were other ways that counsel could obtain information in addition to discussions with their client. In Hertenstein, court stated:

> Counsel for plaintiff has alternative methods, furthermore, to obtain insight into the examination and to prepare for the cross-examination of Dr. Hughes. Plaintiff may obtain a detailed written report of Dr. Hughes upon request. See Fed.R.Civ.P. 35(b)(1). The report must "set[ ] out the examiner's findings, including results of all tests made, diagnoses, and conclusions." If defendant designates Dr. Hughes as a "testifying expert", furthermore, Dr. Hughes must provide plaintiff a report containing "a complete statement of all opinions to be expressed and the basis and the reasons therefor." See Fed.R.Civ.P. 26(a)(2)(B). The report must also contain "the data or other information considered by [him] in forming [his] opinions." Id. If defendant identifies Dr. Hughes "as an expert whose opinions may be presented at trial", plaintiff may depose him. See Fed.R.Civ.P. 26(b)(4)(A). Her attorney may then inquire about the examination. Plaintiff may also discover "through interrogatories or by deposition" facts known or opinions held by Dr. Hughes, if defendant chooses not to rely upon his testimony at trial. See Fed.R.Civ.P. 26(b)(4)(B).

189 F.R.D. at 632. In Tomlin, the court also referenced the availability of a report from defendant's expert. 150 F.R.D. at 633. Also, the Tomlin court observed the examinations conducted by plaintiff's psychologists had not been recorded; hence, as matter of fairness, plaintiff's counsel would be on equal footing with defense counsel. Id.

The court in Hertenstein also dismissed the other reasons proffered in that case for why a recording should be permitted. The court held that there was no right to have counsel present or to a recording that plaintiff's counsel could later review. As for the comfort that a recording might provide plaintiff during the interview, the court was not convinced this was enough in view of the contrary considerations, particularly given that plaintiff had not made a particular showing of the need for such support. Hertenstein, 189 F.R.D. at 629–34.

After considering the proffered reasons for recording, the Hertenstein and Tomlin courts

turned to the countervailing considerations, the most important of which being the potential for negative impact. As described by the courts in those cases (and essentially also by the American Academy of Clinical Neuropsychology in its policy statement referenced earlier), recording would negatively impact the process in several ways and potentially impact the results. First, recording would be a distraction, albeit, perhaps, to a lesser degree in the case of an audio recording. Second, recording has the potential for introducing an air of adversariness in the examination that would be inimical to obtaining reliable and accurate information. Third, recording may inhibit plaintiff from making full and complete responses or consciously or unconsciously exaggerating or diminishing responses and reactions as a result of a perception that the recording is critical to the case. Hertenstein, 189 F.R.D. 630–31; Tomlin, 150 F.R.D. at 631–32.

The ultimate conclusion of the Tomlin court after balancing the purported benefits of recording against the detriments has already been set forth above. In Hertenstein, the court similarly concluded:

> Weighing the concerns of the parties and the physicians, the court finds the presence of a mechanical recording device inappropriate under the facts of this case. Plaintiff has demonstrated no need for it. Its presence may invalidate the results of the examination, as it may consciously or unconsciously influence plaintiff "to exaggerate or diminish h[er] reactions" to the examination. See Holland v. United States, 182 F.R.D. 493, 496 (D.S.C.1998). Plaintiff could perceive the recording as "critical to h[er] case and fail to respond in a forthright manner." Id. The concerns of plaintiff, and her physician do not outweigh the occasion for a reasonable examination by defendant. In this case there is no evidence that Dr. Hughes will improperly question plaintiff. In the absence of such evidence the court declines to require recording of the examination. Cf. Dodd–Anderson v. Stevens, Nos. 92–1015–MLB and 92–1016–MLB, 1993 WL 273373, at *2 (D.Kan. May 4, 1993) (applying same rationale in the context of allowing the presence of an attorney at the Rule 35(a) examination).

189 F.R.D. at 631.

In this case, following Hertenstein and Tomlin, plaintiff has failed to demonstrate sufficient cause for the court to order the recording of the defendant expert's diagnostic interview of the

plaintiff. This includes the failure to demonstrate either actual bias on the part of defendant's expert or the likelihood he will not follow accepted professional practices and ethical norms. For the reasons articulated in <u>Hertenstein</u> and <u>Tomlin</u>, bias and unfairness will not be presumed. Further, in the unlikely event it is established that abuse did occur during the diagnostic interview, the court has options. These include disallowing all or in part the opinions and testimony of defendant's expert. Finally, while recording will not be required for these reasons, the court agrees with the <u>Tomlin</u> court that the lack of any recording of plaintiff's prior examinations also militates against ordering that
defendant expert's diagnostic interview be recorded.

    **C.**    **Length of the examination**

Defendant's expert states that the examinations he conducts normally takes between eight to eighteen hours, depending upon the nature of the case, and what is desired here is an examination lasting *approximately* nine hours including breaks. The proposed schedule (although, perhaps, the order might vary) would be as follows:

- 2 hours for a diagnostic interview
- 15-20 minute break
- 1 hour lunch break
- 2 to 2.5 hours for cognitive testing
- 15-20 minute break
- 45-90 minutes to complete symptom questionnaire

Plaintiff complains this is excessive under the circumstances and asks the court to limit the examination to four hours with no diagnostic interview.

The court has already decided that a diagnostic interview will be permitted. With that, it appears from the record here that the proposed length of the examination is within professional norms and not materially different from what plaintiff has already undergone. Further, plaintiff has made no showing that he is physically or mentally incapable of completing the proposed examination, which includes substantial time for breaks.

Plaintiff's objections with respect to the length of examination as proposed by defendant's expert are overruled. Defendant's expert shall endeavor to complete the examination with the time frames set forth above.

### D. Timing of the examination

Unless the parties mutually reach a different agreement, the examination by defendant's expert shall proceed on June 7, 2019. With that, there is no reason to change the scheduled trial date.

## III. ORDER

Defendant's motion to compel a Rule 35 neuropsychological examination of the plaintiff is **GRANTED**. The examination shall proceed in accordance with what the court has set forth above.

**IT IS SO ORDERED**.

Dated this 24th day of May, 2019.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge